IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

EMIR DINI,

                Plaintiff,

v.

STATE OF WISCONSIN, AND
WISCONSIN LEGISLATIVE
REFERENCE BUREAU,

                Defendants.

OPINION AND ORDER

20-cv-87-wmc
_____

Pro se plaintiff Emir Dini is proceeding against defendants on Title VII discrimination claims. (Dkt. 18.) Relevant here, Dini alleges that he was denied a legislative research analyst position with the Wisconsin Legislative Reference Bureau (LRB) because he is African American, and that defendants' practice of "word-of-mouth hiring" discriminates against applicants in this protected class. (Dkt. 37 at 4-5.) Dini moves for an order compelling defendants to provide "full and complete answers" to his first set of interrogatories as a sanction for failing to disclose information to which he believes he is entitled. I am granting this motion in part and deny it in part as provided below.[1] (Dkt. 34.)

To support his claims, Dini wants information about the LRB's workforce. To that end, Dini asks two senior LRB administrators, Chief Champagne and Deputy Chief Hanaman, to identify themselves ethnically and racially, and to indicate whether either of them has "family, friends and or in-laws that [they] would consider as being African-American, Black or Biracial ('as in being partly black')?" (Dkt. 29-1 at 1.) Dini argues that both administrators have

---

[1] Dini previously filed a motion to compel seeking the same relief. (Dkt. 29.) He then moved to withdraw that motion after defendants obtained new counsel. (Dkt. 33.) I will grant the unopposed motion to withdraw, and limit my consideration to the parties' arguments presented in relation to Dini's renewed motion to compel. (Dkt. 34.) Also, I am denying as moot Dini's motion asking for a ruling on his renewed motion, as I have now considered it. (Dkt. 38.)

general "hiring authority," so he needs this information "to show that preferences for those within these tightly-knit social circles works in a manner that excludes African-Americans from consideration." (Dkt. 34 at 5.)

Defendants object to these interrogatories on the ground that this information about Champagne and Hanaman is not relevant to Dini's claims. Relevant evidence "has any tendency" to make a material fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). However, the scope of relevancy under Rule 26 is broad in that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Dini's disparate treatment claim requires sufficient evidence to allow a reasonable juror to conclude that his race, national origin, or religion were motivating factors in the LRB's decision not to hire him. *See* 42 U.S.C. § 2000e-2(a)(1) (unlawful for an employer "to fail or refuse to hire" an individual "because of such individual's race, color, religion, sex, or national origin"). Unlike disparate treatment, which exists only when an employer intentionally discriminates, disparate impact exists when an employment policy or practice affects members of a protected group more harshly, even if the impact is unintended. *Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016).

Because there is no allegation that Champagne was involved in the legislative research analyst hiring process, or in any other hiring process, I will not compel him to answer either of these interrogatories. (Dkt. 34 at 5.) But Hanaman allegedly was a member of the hiring committee that declined to hire Dini, so I will require that defendants disclose how she self identifies within a week of this order, even though this information, in combination with other

2

evidence, may be insufficient to prove his claims. *See, e.g.*, *United States v. Rutledge*, 648 F.3d 555, 561 (7th Cir. 2011) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (courts may not conclusively presume that members of a protected class will not discriminate against other members of that class); *Montgomery v. Esper*, No. 1:18-cv-01317, 2019 WL 5654985, at *3 (E.D. Va. Oct. 31, 2019), *aff'd*, 801 F. App'x 167 (4th Cir. 2020) (that non-African American decisionmakers hired a non-African American applicant instead of the African American plaintiff was insufficient on its own to raise an inference of discrimination).

I will not compel defendants to specify the racial and ethnic identities of Hanaman's family and friends. That would be complete overkill. First, the request is overly broad, vague, intrusive and burdensome. Dini does not clarify who he considers to be family or a friend, or how deeply into Hanaman's social circle he wants her to go. This could involve hundreds of people, and Hanaman may not be able to accurately report all of their racial and ethnic identities without asking some–or many– of them. The intrusiveness and heavy burden of responding to such an inquiry greatly outweighs any conceivable relevance this information might have in this lawsuit, and I cannot conceive how this information would be relevant or admissible in motions practice or at trial. After all, Dini does not allege that any of Hanaman's family or friends work at or have applied for positions at the LRB, or are otherwise involved in the underlying events of this case. There is no reason to think that this information has any bearing on why Dini or any other applicant was not hired for a position at the LRB, or on the number of qualified African American candidates who may have been excluded from working there.

Dini also asks Champagne and Hanaman to disclose if they have ever "had the chance to work alongside someone who considered themselves to be African-American, Black, or Biracial

3

('as in being partly black')" and if so, what jobs these individuals hold at the LRB. (Dkt. 29-1 at 2.) Defendants object on the ground that "[t]he races or ethnicities of specific employees" are not relevant here. (Dkt. 29-1 at 2.) However, defendants volunteer that these administrators recall "five former or current LRB employees whom they believe would identify themselves as nonwhite/members of a minority group" and specify the jobs these five individuals hold, including three legislative analysts. (Dkt. 29-1 at 2.) Dini therefore has his answer.

Unsatisfied, Dini insists that defendants must further specify whether any of these five individuals self-identify as African American. Dini argues that if these administrators can recall working with five people of color, they are also "capable of determining the racial composition of their co-workers." (Dkt. 34 at 4.) Even so, I will not compel them to attempt this determination based on their personal observations and beliefs about other employees' races. Such anecdotal information would not be an accurate, reliable statistic for measuring how many African Americans the LRB has employed and in what positions, and to what extent qualified African American applicants have been excluded or disqualified due to the particular hiring practice alleged here. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i) (to prove disparate impact, plaintiff must show that a particular hiring practice had an adverse impact on applicants with a protected characteristic, such as race or color); *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) (as part of the prima facie case, plaintiff must show causation, typically by "offer[ing] statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.").

4

That said, Dini indicates he is also "in the process of obtaining statistical information to verify" Champagne and Hanaman's assertions about the racial composition of the LRB's workforce. (Dkt. 34 at 3.) Such statistical information, as well as similar information about applicants for the at-issue job, could lead to relevant comparator evidence. *See, e.g.*, *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 & n. 13 (1977) (proper statistical comparison "was between the racial composition of Hazelwood's teaching staff and the racial composition of the qualified public school teacher population in the relevant labor market," but suggesting that data regarding applicants for teaching positions would also be "very relevant"); *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1254 (7th Cir. 1990) (plaintiff's "statistics should compare the racial composition of the pool of 'qualified' applicants to the racial composition of, in this case, the sergeants in the Oak Park Police Department"); *Frederickson v. Landeros*, 943 F.3d 1054, 1062 (7th Cir. 2019) ("if the plaintiff and a comparator share the relevant characteristic, then differential treatment may suggest an impermissible motive").

However, the LRB says it does not ask, and is not required to ask, applicants or employees to report their racial, ethnic, or religious affiliations, so that information is not available to defendants. (Dkt. 35 at 12.) Dini counters in reply that the LRB is not in compliance with its obligation to collect and report "the racial and gender composition of its workforce" under § 709(c) of the Civil Rights Act of 1964. (Dkt. 37 at 5-6.) But he does not cite any authority for the proposition that the LRB, a legislative service agency, falls within the Act's record keeping or reporting requirements for state and local governments.[2] Regardless, the

---

[2] Dini references the State and Local Government Information Report, or EEO-4 Report, a biennial survey collected from state and local governments with 100 or more employees indicating workforce composition by sex and race, among other categories. 29 CFR § 1602.32; *see* State of Wisconsin Division of Personnel Management, EEO and AA Reports, https://dpm.wi.gov/Pages/EEO-and-AA-Reports.aspx (posting prior Wisconsin EEO-4 report data). Every "political jurisdiction with 15 or more employees is required to

5

bottom line is that I cannot compel defendants to produce data they do not have, and I would expect defendants to have timely responded to any properly submitted discovery request for available LRB applicant and employee statistical data concerning the suspect classes at issue in this case. Should the parties require additional time to exchange and review such discovery before dispositive motions are due, they may ask for a short extension.

Finally, the parties also dispute whether Dini's communications with defense counsel regarding this discovery dispute constituted an attempt to confer in good faith and each party asks me to warn the other to be more professional and courteous or face sanctions. (Dkt. 34 at 6-7; dkt. 35 at 12-13.) The court has the inherent power to impose respect and decorum, and to fashion appropriate sanctions for conduct that abuses the judicial process, including revoking an offending party's IFP status and dismissing his lawsuit. *Lamon v. Funk*, 2016 WL 6647754 at \*2 (S.D. Ill. 2016); *see also Henderson v. Brower*, 2018 WL 6267907 at \*3 (E.D. Wis. 2018) (courts have inherent power to sanction a party's misconduct); *Bernegger v. Gray & Associates, LLP*, 2009 WL 3148723 at \*4, n.3 (failure to heed the court's warning regarding uncivil conduct is grounds for dismissal as a sanction).

Defendants stake their position on email exchanges between the parties regarding this dispute. (Dkt. 36.) After the parties had reached an impasse, defendants argue that Dini was quick to threaten to file motions with the court and a state bar complaint, and would not afford defendants even two weeks to consider a settlement offer. Perhaps more patience was due, but Dini did take the initiative to move to withdraw his initial motion to compel and reach out to defendants' new lawyer in an attempt to resolve the dispute. And while Dini declined to make

---

make or keep records" that are necessary to complete the EEO-4 Report. 29 CFR § 1602.30.

himself available to discuss the dispute over the phone, he offered to communicate via email. So I will not deny his motion to compel for failure to meet and confer.

More concerning is how Dini insulted defendant's previous attorney, referring to her as "a horrible human being" and a "sociopath" in emails, and accusing her in a motion of having "bilked in excess of $100,000+ in litigation-related costs" from the state and viewing him as "a jobs program." (Dkt. 32-2 at 1-2, dkt. 35 at 3.) True, Dini claims to have apologized about his emails, (Dkt. 37-8 at ¶ 8), but that doesn't excuse having said these things in the first place. Dini maintains that he has a right to express concern about spending taxpayer funds to litigate this case, but accusing defendants and their attorney of bilking the state and exploiting him in furtherance of their commitment to maintaining a segregated workplace were unjustified *ad hominem* attacks that this court will not countenance.

Having been called out by defendants, Dini asks the court to let him off with a warning, asserting that now he is committed to being courteous and he has enlisted a friend to read his emails for proper tone and content. This doesn't excuse how Dini has behaved, but this court rarely sanctions pro se litigants without first warning them to fly straight. If Dini engages in any inappropriate communications or behavior toward defendants or their attorney–and the court will be the sole judge of "inappropriate"–then the court will close Dini's discovery and it will impose additional sanctions commensurate with the egregiousness of Dini's conduct, which could include dismissing this lawsuit with prejudice. *Praemonitus praemunitus.*

7

ORDER

IT IS ORDERED that:

1. Plaintiff Emir Dini's motion to dismiss his first motion to compel (dkt. 33) is GRANTED and his first motion to compel (dkt. 29) is WITHDRAWN.

2. Plaintiff's renewed motion to compel (dkt. 34) is GRANTED IN PART and DENIED IN PART in the manner stated above. Not later than August 25, 2021, defendants must respond to plaintiff's Interrogatory #1 on behalf of Cathlene Hanaman.

3. Plaintiff's motion for miscellaneous relief (dkt. 38) is DENIED as moot.

4. For the remainder of this lawsuit plaintiff shall comport himself courteously and appropriately.

Entered this 18th day of August, 2021

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge